## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

_____

SHAW & ASSOCIATES, INC., a New Mexico
corporation; and JERRY SHAW & ASSOCIATES,
INC., an Arizona corporation,

      Plaintiffs,

v.                                      Civil No. 04-123 WJ/DJS

AMERICAN CONTRACTORS INDEMNITY
COMPANY, a California corporation; ANDY
FAUST; and DOES 1 through 50, inclusive,

      Defendants.

### MEMORANDUM OPINION AND ORDER ON DEFENDANT AMERICAN CONTRACTORS INDEMNITY COMPANY'S MOTION TO DISMISS AND PLAINTIFFS' MOTION TO FILE SURREPLY

THIS MATTER comes before the Court pursuant to Defendant American Contractors

Indemnity Company's Motion to Dismiss Complaint [Docket No. 12] and Plaintiffs' Motion to

File Surreply [Docket No. 28].

## BACKGROUND

Plaintiffs' Complaint is brought for Breach of Contract, Accounting and Dissolution,

Breach of Implied Covenant of Good Faith and Fair Dealing, Breach of Fiduciary Duty,

Conversion, Interference with Existing Contractual Relationships, Declaratory Relief and

Violation of State Insurance Codes.[1]  The Complaint alleges that Plaintiff Shaw and Associates,

Inc. is a New Mexico corporation licensed and authorized as a surety bond producer in the State

_____

[1]The Title of the Complaint states that the Complaint is also brought for interference with
prospective economic advantage.  However, no such claim is found within the body of the
Complaint.

of New Mexico, and Plaintiff Jerry Shaw and Associates, Inc. is an Arizona corporation licensed and authorized as a surety bond producer in the State of Arizona and the State of California. These Plaintiffs are collectively referred to as "SHAW" in the Complaint, and the Court will continue to refer to them collectively as Shaw.

Shaw alleges that Defendant American Contractors Indemnity Company (ACIC) is a corporation currently existing under the laws of California and doing business in California, New Mexico and Arizona where it is licensed as an insurance and surety company.

According to the Complaint, Shaw began operating as a surety bond producer in 1980, developed a solid and enviable reputation, and generated millions in surety bond premiums while maintaining a favorable loss ratio. Sometime in approximately 1994, Jerry Shaw, the principal shareholder and President of Shaw, made the business acquaintance of the founder and principal shareholder of ACIC. The Complaint alleges that Shaw and ACIC initially entered into a joint venture involving Shaw's representation of ACIC for the purpose of jointly conducting a surety business. Over time, ACIC initiated discussions with Shaw attempting to persuade Shaw to place substantially all of its contract surety bond business with ACIC. According to the Complaint, ACIC proposed an expanded joint venture wherein Shaw would have significant underwriting authority by ACIC on Shaw's book of business, Shaw would have substantial input and responsibility with respect to claims investigations, Shaw would have a role as counselor to ACIC with respect to certain management and reinsurance functions, and Shaw would share equally with ACIC in the gross premium revenues generated by Shaw for ACIC and in the net ultimate losses incurred on Shaw's book of business placed with ACIC.

Based on ACIC's proposal, Shaw began in 1994 to produce, underwrite, manage and adjust claims on surety bonds for ACIC on an expanded basis and began to transfer its book of business to ACIC.  The Complaint alleges that, over the time period from about July 1998 through July 2001, ACIC continued to expand Shaw's authority and responsibility as an incentive to continue to place its book of business with ACIC.  These incentives included authorizing Shaw to communicate directly with ACIC's reinsurer's on underwriting issues, the appointment of Jerry Shaw to ACIC's Board of Directors, giving Shaw broad underwriting authority and Powers of Attorney to execute bonds on behalf of ACIC, authorizing Shaw to work with bond principals and indemnitors in the investigation and adjustment of claims, requesting Jerry Shaw to participate in negotiations with reinsurers, and assuring that ACIC personnel did not execute bonds for customers in Arizona and New Mexico in order to maintain Shaw as the exclusive producer of bonds in those states.  After Defendant Faust was installed as President of ACIC, the former President continued as Chairman and CEO, excluded Faust from any involvement in the relationship between ACIC and Shaw and designated himself as the sole decision maker with respect to the dealings between Shaw and ACIC.

The Complaint alleges that ACIC requested that Shaw leave with ACIC nearly all the premium revenues earned on Shaw's book of business with the exception of an agreed upon commission.  This accommodation was requested in order to improve the presentation of ACIC's periodic statements of financial condition.  Shaw agreed to this accommodation.  In consideration, ACIC agreed to accrue to the account of Shaw sums equal in percentage to the earnings made by ACIC on its liquid assets and not charge Shaw's account with any general or specific loss reserves.

3

Shaw alleges in the Complaint that ACIC and Shaw operated under agreements implied in fact and law based on the terms, understandings and course of dealing of the parties. Shaw acknowledges that some of the terms of the agreements were reduced to writing. There are, in fact, three written contracts, described more fully herein, attached to Shaw's Complaint. However, Shaw asserts that, due to the relationship of trust and confidence between Shaw and ACIC, neither of the parties insisted on the preparation of fully integrated written contracts memorializing all of the terms of their agreements choosing instead to rely on their acts, words and good faith conduct to represent the basis and terms of the relationship.

Over the period from October 1994 to approximately July 1998, in reliance on the implied agreements and joint venture, and in reliance on ACIC's good faith and fair dealings, Shaw transferred substantially the entirety of its book of business to ACIC such that it became dependent on the relationship established between ACIC and Shaw for the continued viability and success of its business. According to the Complaint, Shaw generated approximately eleven million, five hundred thousand dollars ($11,500,000.00) in premiums during the period from October 1994 through approximately November 2001 which, after deductions for taxes and net reinsurance costs, amounted to gross income to be shared between ACIC and Shaw of at least nine million five hundred thousand dollars ($9,500,000.00). Of that sum, Shaw alleges that at least three million dollars ($3,000,000.00) remain subject to accounting and distribution.

In approximately July 2001, the former president of ACIC who had maintained control of the relationship between ACIC and Shaw suffered a massive stroke rendering him totally and permanently incapacitated. As a result, he was removed as Chairman and CEO of ACIC. Shortly thereafter, Defendant Faust began involving himself in the business dealings between

4

Shaw and ACIC and began a course of dealing with Shaw that effectively denied it the benefits of its agreements with ACIC.  These acts allegedly included attempting to limit or even eliminate Shaw's authority to underwrite and execute bonds in the manner and at the level previously agreed and practiced with ACIC, insisting on different definitional criteria for underwriting bonds proposed by Shaw, restricting Shaw's right to distribute bonds and failing to distribute bonds in a timely manner, misrepresenting the underwriting requirements of ACIC's reinsurers and wrongfully rejecting bond submissions by Shaw, wrongfully issuing cancellation notices on license and other bonds of Shaw's customers, unnecessarily delaying responses to time sensitive bond requests, falsely claiming that underwriting documents previously provided by Shaw had not been received and thus denying or delaying approval of Shaw's bond applications, attempting to impose modified risk sharing responsibility on Shaw as a condition of approval of bond applications, and interfering with the process of submissions for special acceptances.

Based on this modified course of conduct, Shaw advised Faust and other senior management at ACIC in November 2001 that such conduct was in violation of the agreements of the parties and would ultimately cause the demise of Shaw's business operations in New Mexico, Arizona and California.  Nonetheless, ACIC did not cease its violations of the agreements, and actually intensified its apparent efforts to sabotage the relationship between Shaw and ACIC. Shaw was consequently forced to shut down its operations by selling its book of business in New Mexico and Arizona and referring its California customers to others who could attempt to meet the customers' needs.  Between January 2002 and August 2003, Shaw and ACIC attempted to resolve the dispute between them, but were unsuccessful.

The first cause of action stated in Shaw's Complaint is a claim for breach of contract against ACIC and other defendants.  This claim alleges that the terms of the implied in fact and law agreements and understandings of the parties entitled Shaw to half the gross premium revenues less certain costs and losses and an accrual of earnings on undistributed premiums, and that Shaw did not take distribution of its share of these premium revenues in order to permit ACIC to use the retained moneys as an asset in its financial statements.  The claim also alleges that ACIC agreed to provide Shaw with contract surety facilities sufficient to enable Shaw to carry out its responsibilities to customers in its book of business including providing Shaw reasonable authority and limits.  Shaw alleges that ACIC breached these agreements by failing to provide Shaw with an accurate accounting of sums due to Shaw, revoking Shaw's authority to underwrite the issuance of bonds to its customers, failing to promptly and adequately respond to Shaw's bond applications, unilaterally altering underwriting definitions, standards and procedures for Shaw's customers, violating Shaw's rights of exclusive representation of ACIC in Arizona and New Mexico, and terminating Shaw's agency and representation relationship of ACIC in New Mexico, Arizona and California.  Shaw asserts that it has performed all of its obligations under the agreements except those excused or prevented by the conduct of ACIC. Shaw alleges damages in the amount of five million dollars ($5,000,000.00).

Shaw's second cause of action is against ACIC and other defendants for accounting and dissolution of the alleged joint venture of the parties.  Shaw demands an accounting of the sums earned by the joint venture and a dissolution of the joint venture.

Shaw's third cause of action is against ACIC and other defendants for breach of the implied covenant of good faith and fair dealing.  This claim alleges that there was an implied

covenant of good faith and fair dealing as part of the joint venture between Shaw and ACIC, that the implied covenant required ACIC to protect and share all assets of the venture with Shaw in accordance with the terms of the agreements, that the covenant prohibited ACIC from interfering with Shaw's rights under the agreements, and that ACIC had a duty not to unilaterally change the nature of the parties' agreements and relationship without Shaw's consent. Shaw alleges that ACIC breached the implied covenant of good faith and fair dealing by actively interfering with Shaw's book of business and customer relationships and thereby deprived Shaw of the benefit of the agreements. Shaw also alleges that ACIC breached the implied covenant by undertaking direct and indirect competition with Shaw in Arizona and New Mexico.

Shaw's fourth cause of action is against ACIC and other defendants for breach of fiduciary duty. In this count, Shaw alleges that a mutually owed fiduciary duty arose between Shaw and ACIC by virtue of the alleged joint venture and that ACIC breached its fiduciary duty to Shaw by impairing Shaw's ability to do business and service its book of business, by competing directly with Shaw in Arizona and New Mexico, by withdrawing Shaw's underwriting ability without cause, by delaying and wrongfully denying the processing of surety bond applications, and by refusing requests for accurate accounting of the retained premium.

Shaw's fifth cause of action is brought against ACIC and other defendants for conversion. Shaw alleges in this count that it paid over and deposited with ACIC the premiums generated on Shaw's book of business and that these premiums were to be deposited into a segregated account by ACIC for the benefit of the joint venture. Shaw alleges that the segregated account should have had in excess of three million dollars ($3,000,000.00) as of early 2002. According to Shaw, ACIC failed to maintain a segregated account for the retained premiums from Shaw's book of

business, commingled these funds with ACIC's own general operating funds, used the funds for

ACIC's sole and exclusive benefit, and thereby converted the funds.

The sixth cause of action in Shaw's Complaint is brought against ACIC and other

defendants for interference with existing contractual relationships.  In this count, Shaw alleges

that it had for many years developed relationships with the various customers reflected in its

book of business and these relationships generated substantial premium income to Shaw.  Shaw

states that ACIC was well aware of Shaw's contractual relationships with these customers given

that Shaw was placing substantially all its bond business with ACIC as part of the agreements

between ACIC and Shaw.  According to Shaw, ACIC was also aware that Shaw's contractual

relationships with its customers were valuable because Shaw had generated more than eleven

million dollars ($11,000,000.00) in gross premium income to ACIC pursuant to the agreements

between ACIC and Shaw.  Shaw alleges that ACIC, along with other Defendants, engaged in a

scheme and conspiracy to destroy Shaw's book of business and divert Shaw's customer base to

ACIC by intentionally disrupting the business relationship between Shaw and its customers.  The

specific alleged conduct by ACIC of which Shaw complains includes wrongfully informing

Shaw that it no longer had authority to underwrite bonds in the manner and at the levels

previously agreed and practiced between Shaw and ACIC, arbitrarily and capriciously insisting

on different definitional criteria for underwriting bonds proposed by Shaw, misrepresenting the

underwriting requirements of ACIC's reinsurers and using such as pretexts to wrongfully reject

bond submissions by Shaw, Wrongfully issuing cancellation notices to Shaw's customers,

delaying response to time sensitive bond applications, and falsely claiming that documents

provided by Shaw had never been received and using this as a reason to delay or deny approval

of Shaw's bond applications.  Because of this interference, Shaw claims that its customers were required to terminate their business with Shaw and that Shaw has thus been required to cease its operations in New Mexico and Arizona and substantially diminish its operations in California resulting in more than five million dollars ($5,000,000.00) in damages.

Shaw's seventh cause of action is not brought against ACIC so is not relevant to this motion.  Shaw's eighth cause of action is brought against ACIC and other Defendants and requests declaratory relief.  In this claim, Shaw states that an actual controversy has arisen between ACIC and Shaw regarding their respective rights and duties under the agreements between them.  Shaw seeks a judicial declaration of the rights and duties of each of the parties and a declaration that Shaw is entitled to an accounting and distribution of fifty percent (50%) of all sums earned as described within the Complaint.

The ninth cause of action in Shaw's Complaint is brought against ACIC for violation of insurance codes regarding an agents' rights.  In this claim, Shaw alleges that the insurance codes of California, New Mexico and Arizona prohibit the termination of a contract appointing an independent agent without prior proper written notice of termination at least 120 days prior to termination.  Shaw states that it was an independent agent for ACIC in California, New Mexico and Arizona, and that ACIC acted to terminate its contract with Shaw on or about February 28, 2002 without providing the requisite notice to Shaw.  Additionally, Shaw alleges that ACIC wrongfully sent cancellation notices of existing surety bonds placed by Shaw in contravention of the laws of Arizona, New Mexico and California.

On March 15, 2004, Defendant ACIC filed its Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  In its motion, ACIC argues that it is entitled to dismissal of Shaw's claims against it

because the contract between Shaw and ACIC prohibited subsequent implied-in-fact modification such that Shaw cannot assert any facts creating an implied joint venture, and the absence of a joint venture defeats Shaw's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of fiduciary duty.  ACIC urges that Shaw's claim for conversion fails because, as a matter of law, the property Shaw claims was converted is not subject to conversion.  ACIC contends that Shaw's claim for interference with contractual relations fails to state a claim because the contractual relationships between Shaw and its customers were entered into by Shaw as an agent for ACIC, the contracts were thus ACIC's contracts, and ACIC cannot, as a matter of law, interfere with its own contracts.  With regard to Shaw's request for declaratory relief, ACIC asserts that a declaratory judgment claim is not appropriately stated when it reiterates other causes of action in the same complaint.  ACIC advances that Shaw's claims for violations of New Mexico and Arizona law fail because California law controls, and the claim for violation of California law fails because California law was not, as a matter of law, violated.  Finally, ACIC argues that, because no joint venture exists between Shaw and ACIC, Shaw cannot assert a claim for an accounting or dissolution.

On April 12, 2004, Shaw filed a Response to ACIC's Motion to Dismiss.  The Response requested that ACIC's Motion to Dismiss be denied, or, in the alternative, that Shaw be allowed to amend the complaint.  On May 10, 2004, ACIC filed its Reply brief.  On May 17, 2004, Shaw filed a Motion to File Surreply stating that it needed an opportunity to respond to ACIC's Reply.  ACIC objected to Shaw's motion file a surreply.  Briefing is now complete on the motion to file a surreply.

**LEGAL STANDARD**

"A complaint should not be dismissed for failure to state a claim unless it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Curtis Ambulance of Florida, Inc. v Board of County Comm'n of the County of Shawnee, Kansas, 811 F.2d 1371, 1375 (10th Cir. 1987).  When deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept as true all well-pleaded allegations in the Complaint and construe them in the light most favorable to the plaintiff.  Bullington v United Air Lines, Inc., 186 F.3d 1301, 1311 (10th Cir. 1999).  In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court may look to both the Complaint and any documents attached as exhibits to the Complaint.  Oxendine v. Kaplan, 241 F.3d 1272 (10th Cir. 2001).  To state a claim under Fed. R. Civ. P. 8(a)(2), the plaintiff must offer a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.  Conley v. Gibson, 355 U.S. 41, 47 (1957).  The Supreme Court has emphasized that the requirements at the pleading stage are de minimus.  See Swierkiewicz v. Sorema, 534 U.S. 506, 514 (2002) (a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations); Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 104 (1998) (the court must presume that the general allegations in the complaint encompass the specific facts necessary to support those allegations).

**DISCUSSION**

I.   PLAINTIFF'S MOTION TO FILE SURREPLY

D.N.M.LR-Civ. 7.6(b) states that the filing of a surreply requires leave of the Court.  The Tenth Circuit has held that, when a district court accepts a reply brief from a movant that

contains new material or argument, the court must either permit a surreply from the nonmovant or must refrain from relying on the new material or argument in ruling on the motion.  See Beaird v. Seagate Tech.,  Inc., 145 F.3d 1159 (10th Cir. 1998) discussed in Doebele v. Sprint/ United Mgmt. Co., 342 F.3d 1117, 1139 n. 13 (10th Cir. 2003).

 In support of its request to file a surreply, Shaw's motion states that it needs an opportunity to respond to ACIC's reply brief because "new legal citations, theories and facts have been presented in the Defendants Reply Briefs which warrant and justify a response by Plaintiff."  See Docket No. 28 p. 1.  Shaw's motion gives no specific examples of new arguments, citations, theories or facts contained in ACIC's reply brief.  ACIC's response to Shaw's motion notes Shaw's failure to point out any new argument, citations, theories or facts contained in its reply and further states that any theory or fact in its reply was directly responsive to Shaw's response brief.

 Shaw's Reply brief to the motion to file a surreply contains, for the first time, alleged specific examples of new theories, arguments, facts and citations contained in ACIC's reply to the motion to dismiss.  Ironically, Shaw raises these for the first time in its Reply to its motion to file a surreply.  Thus the Court is currently required to either permit ACIC to file a surreply to Shaw's motion to file a surreply or to disregard the new arguments in Shaw's reply.  As a catch-22, however, if the Court ignores the material in Shaw's reply, denies Shaw's motion to file a surreply, then considers new arguments, facts or theories in ACIC's reply to the motion to dismiss, the Court will have committed error.  The Court will solve this sticky problem by denying Shaw's motion to file a surreply to ACIC's Motion to Dismiss while declining to consider any material or argument in ACIC's Reply to its motion to dismiss that was not raised in

its motion.  Because I herein deny Shaw's motion to file a surreply, briefing on ACIC's Motion

to Dismiss is complete, and I proceed to rule on that motion.

II.       DEFENDANT ACIC'S MOTION TO DISMISS

    A.       Does Shaw's Complaint Adequately State a Claim for Breach of Contract, Breach
             of the Implied Covenant of Good Faith and Fair Dealing and Breach of Fiduciary
             Duty Because it Cannot be Said, as a Matter of Law, that the Written Contract
             Between ACIC and Shaw Precludes any Subsequent Modification or that No Joint
             Venture Existed?

        Defendant ACIC urges that Shaw's claims for Breach of Contract, Breach of the

Covenant of Good Faith and Fair Dealing and Breach of Fiduciary Duty all rest on the allegation

that the agreements between Shaw and ACIC included implied-in-fact agreements and the

existence of a joint venture.  ACIC argues that the written agreement between Shaw and ACIC

expressly prohibits oral modification or modification by subsequent practice or course of dealing.

Thus, ACIC contends, there can be no implied-in-fact agreements between the parties made

subsequent to the written agreement.  ACIC also asserts that the written agreement does not

create or contemplate a joint venture, and the express terms of the written agreement prohibiting

modification precludes a claim based on a joint venture.

        Attached to Shaw's Complaint as Exhibit A are three written agreements between Shaw

and ACIC.  In chronological order, the first is dated October 24, 1994 and became effective that

same date.  This agreement states that it supersedes all previous agreements between the parties

whether written or oral.  By the agreement, ACIC appointed Shaw its non-exclusive general

agent in the State of New Mexico.  The agreement gives Shaw authority to issue bonds, but limits

this authority based on the types of bonds, the amount covered by each bond and the

underwriting authority granted by ACIC.  Under the agreement, ACIC was to pay Shaw a front

commission of some specified percentage with the percentage differing depending on the type of bond.  The agreement also states that the parties will share mutually in the profits and losses with Shaw having a proportionate share of 75%.  The agreement provides for the creation of a "build up fund" from which profits and losses would be paid.  This fund was created from a percentage of premiums generated by Shaw.  The percentages vary by the type of bond.  The agreement includes a clause stating that "No verbal modification will be recognized by either party hereto and this Agreement cannot be modified by any subsequent practice or course of dealing by the parties inconsistent herewith."   The agreement concludes with a choice of law provision stating that the agreement is to be interpreted under the laws of the State of California.

The second agreement is dated November 17, 1994 but became effective retroactive to October 24, 1994.  The agreement states that it supersedes all previous agreements between the parties whether written or oral.  By this agreement, ACIC appointed Shaw its non-exclusive general agent in the State of California.  The agreement gives Shaw authority to issue bonds, but limits this authority based on the types of bonds, the amount covered by each bond and the underwriting authority granted by ACIC.  Under the agreement, ACIC was to pay Shaw a front commission of some specified percentage with the percentage differing depending on the type of bond.  The percentages by type of bond do not differ from the first agreement.  The agreement also states that the parties will share mutually in the profits and losses with Shaw having a proportionate share of 75%.  This agreement contains provisions for the creation of a "build up fund" that are identical to those in the first agreement.  This agreement also includes the clause quoted above regarding modifications and the choice of law provision.

The third agreement is dated September 15, 1995 and effective the same date.  Like the two previous agreements, the agreement states that it supersedes all previous agreements between the parties whether written or oral.  By this agreement, ACIC appointed Shaw its non-exclusive general agent in the States of New Mexico and California.  Like the previous agreements, this agreement gives Shaw authority to issue bonds but limits this authority.  The agreement, like the previous agreements, states that the parties will share mutually in the profits and losses, but this agreement gives Shaw a proportionate share of 50%.  This agreement also provides for the creation of a "build up fund" from which profits and losses would be paid.  Like the first two agreements, the fund is created from a percentage of premiums generated by Shaw.  The percentages differ from those in the previous agreements with the percentages for some types of bonds higher and the percentages for other types lower.  This agreement includes the clause quoted above regarding verbal modifications and modifications by subsequent practice and course of dealing.  Also included in this agreement is the choice of law provision stating that the agreement is to be interpreted under the laws of the State of California.[2]

ACIC's argument that there can be no implied-in-fact agreement between itself and Shaw rests on ACIC's proposition that any implied-in-fact contract would contravene the express language in the contract prohibiting verbal modifications or modifications by subsequent practice.  However, the language of the contract does not prohibit all verbal modifications or modifications by subsequent practice and course of dealing.[3]  It only prohibits those that are

---

[2]The parties do agree that the agreements between them are to be interpreted in accordance with California state law.

[3]Even if the written agreement purported by its express terms to prohibit such modifications, it is not clear that a California court would give effect to such a term.  At common

inconsistent with the terms of the written agreement.  The Court cannot say, based on the face of the Complaint and its attachments, that the implied-in-fact agreements alleged by Shaw are inconsistent, as a matter of law, with the express terms of the written agreement such that Shaw can prove no set of facts in support of its claims that would entitle it to relief.  Therefore, the Court does not find that Shaw fails to state a claim for breach of contract and breach of the implied covenant of good faith and fair dealing.

While the written agreement does not appear to contemplate a joint venture, the Court cannot say, as a matter of law, that a joint venture did not exist between Shaw and ACIC.  First, whether or not a joint venture exists is generally an issue of fact.  See Weiner v. Fleischman, 286 Cal. Rptr. 40 (Cal. 1991).  Additionally, there is always the possibility of some subsequent modification of the agreement or some collateral agreement that created a joint venture. Certainly, the Court cannot say, accepting as true all well-pleaded allegations in the Complaint and construing them in the light most favorable to Shaw, that Shaw can prove no set of facts in support of its claim which would entitle it to relief.  Thus, ACIC is not entitled to dismissal of Shaw's claim for breach of fiduciary duty.

> B.  Does Shaw's Complaint State a Claim for Conversion Because it Cannot be Said, as a Matter of Law, that the Allegedly Converted Property is Not Identifiable or that Shaw has no Ownership or Possessory Interest in the Allegedly Converted Property?

The elements of a claim for conversion are (1) claimant's ownership or right to possession of the property at the time of conversion; (2) respondent's  conversion by a wrongful

---

law, a "no oral modification" clause was, like any term of a contract, subject to modification, so was ineffective to limit modification to those in writing.  See Allan E. Farnsworth, Farnsworth on Contracts § 7.6 n. 7 (3d ed. 2004) (citing cases).

act or disposition of claimant's property rights; and (3) damages.  ACIC contends that Shaw has failed to state a claim for conversion because Shaw cannot show it had an ownership or right to possession of the property at the time of the alleged conversion and because the property allegedly converted is not specifically identifiable.

A mere contractual right of payment, without more, does not give rise to a claim for conversion.  Farmers Ins. Exch. v. Zerin, 61 Cal. Rptr. 2d 707, 709-10 (Cal App. 1997).  In this case, however, Shaw does not allege a mere contractual right of payment.  Shaw alleges that the parties were engaged in a joint venture, that Shaw deposited funds with ACIC to create and maintain the "build up fund," that this fund was to be held in a segregated account for the benefit of the joint venture, and that ACIC converted the "build up fund" to its own benefit.  Thus, Shaw has sufficiently alleged ownership or a right to possession of the property.

A conversion claim cannot apply to intangible property.  Melchior v. New Line Productions, Inc., 131 Cal. Rptr. 2d 347 (Cal. App. 2003).  A claim of conversion will not lie with regard to nonspecific, unidentifiable sums of money.  Vu v. California Commerce Club, Inc., 68 Cal Rptr. 2d 31, 34 (Cal. App. 1997).  However, money can be the subject of an action for conversion if it involves a specific sum capable of identification.  Farmers Ins. Exch., 61 Cal. Rptr. 2d at 709.

The Court cannot state, as a matter of law, that Shaw can prove no set of facts in support of its claim that would entitle it to relief.  Therefore, ACIC is not entitled to a dismissal of Shaw's claim for conversion.

C.    Does Shaw's Complaint State a Claim for Interference With Contractual Relations Because it Cannot be Said, as a Matter of Law, that ACIC was a Party to All Contracts Between Shaw and Shaw's Customers?

17

The elements of a claim for interference with existing contractual relationships are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) damages. Pacific Gas and Elec. Co. v. Bear Stearns & Co., 270 Cal. Rptr. 1 (Cal. 1990).  Defendant ACIC contends that Shaw's claim for interference with existing contractual relationships must fail because all of Shaw's contracts with its customers were entered into by Shaw as an agent for ACIC making ACIC a party to the contracts, and ACIC cannot, as a matter of law, interfere with its own contracts.

ACIC's statement of the law is correct.  The tort of interference with contract will not lie against one who is a party to the contract, Applied Equipment Corp. v. Litton Saudi Arabia, Ltd., 28 Cal. Rptr. 2d 475 (Cal. 1994), and "the contract of the agent, within the scope of his authority, is in legal effect the contract of the principal."  Geary St. P. & O. R. Co. v. Rolph, 207 P. 539 (Cal. 1922).  However, it is not clear from the face of Shaw's Complaint and the attached documents that Shaw complains only of ACIC's interference with contracts between Shaw and third parties entered into by Shaw as an agent for ACIC.  Thus, it cannot be said that Shaw can prove no set of facts in support of its claim that would entitle it to relief, and ACIC is not entitled to dismissal of Shaw's claim for intentional interference with existing contractual relationships.

      D.      <u>Does Shaw's Complaint State a Claim for Violations of State Insurance Codes Because it Cannot be Said, as a Matter of Law, that the Insurance Codes of the States of Arizona and New Mexico have no Application to the Conduct of ACIC Even Given the Contractual Language that the Law of California Would Govern the Contract Between Shaw and ACIC?</u>

Defendant ACIC argues that Shaw's claim based on violations of the insurance codes of the states of New Mexico and Arizona cannot lie because the written agreement between the parties provides that it will be governed by the law of the State of California.  ACIC then points out that California provides no private cause of action for the violation of the specific California Civil Code section that would apply to Shaw's claim.

Plaintiff's claim for violation of state insurance codes is based on the allegation that ACIC terminated the agreement between the parties without the proper notice.  Plaintiff's claim is also premised on the allegation that ACIC wrongfully sent cancellation notices to Shaw's customers.

While the law of the State of California governs the agreement of the parties, this would not necessarily relieve the parties from any obligation to comply with the laws of other states.  Thus, the Court cannot find that Shaw fails to state a claim based on the violation of the laws of the States of New Mexico and Arizona merely because the laws of the State of California govern the agreement between Shaw and ACIC.

ACIC is correct that California does not provide a private cause of action for violation of California Insurance Code § 769 which states in relevant part that "[a]fter a written agency or written brokerage contract, where the broker-agent represents the insurer, has been in effect for at least one year, it shall not be terminated or amended by an insurer, except by mutual agreement, unless 120 days' advance written notice has been given by the insurer to the broker-agent."  See Vikco Ins. Serv., Inc. v. Ohio Indem. Co., 82 Cal. Rptr. 2d 442 (Cal. App. 1999).  Even if Section 769 provided a private cause of action, it is clear from the face of the Complaint and the attached documents that Shaw cannot state a cause of action for a violation of Section 769

19

because the parties, by mutual agreement, provided for termination upon a 30-day written notice. Thus, Shaw cannot state a claim for a violation of Section 769 of the California Insurance Code based on the allegation that it received inadequate notice of the termination of the agreement.

While Shaw cannot state a claim for violation of Section 769 based on allegations of inadequate notice, Shaw also alleges that ACIC wrongfully sent cancellation notices in violation of various state laws.  The Court construes this allegation as including an allegation that ACIC's alleged conduct violated the laws of the State of California.  It cannot be said , from the face of the Complaint and the attached documents, that Shaw can prove no set of facts in support of this claim that would entitle it to relief.  As such, ACIC is not entitled to dismissal of such a claim.

      E.      <u>Does Shaw's Complaint State a Claim for Declaratory Relief Because it Cannot be Said, as a Matter of Law, that the Claim is Improper?</u>

Defendant ACIC argues that Shaw's claim for declaratory relief is an improper restatement of the claims already asserted throughout Shaw's Complaint.  ACIC cites <u>St. Paul Fire & Marine Ins. v. Runyon</u>, 53 F.3d 1167, 1169 (10th Cir. 1995) for support of its statement that Shaw's request for declaratory relief should be dismissed.  In <u>Runyon</u>, the Tenth Circuit noted that the decision whether to entertain a particular declaratory judgment action is vested in the sound discretion of the federal district courts.  <u>Id.</u> at 1168.  The plaintiff in <u>Runyon</u> brought a declaratory judgment action in federal court while a contract action, which involved identical issues to the federal case, was pending in state court.  <u>Id.</u> at 1169.  The federal district court refused jurisdiction over the declaratory judgment action because the state court action was a more effective alternative remedy.  <u>Id.</u>  The Tenth Circuit affirmed noting that the state case

would ultimately resolve all of the issues raised in the federal case, and it was thus unnecessary for the federal court to issue a declaration.  Id.

Even though Shaw's Complaint seeks declaratory relief in its Eighth cause of action, Shaw's federal court case cannot be characterized, as a whole, as a declaratory judgment action. Nor is there a pending case, other than the one at bar, in this Court or any other court that will address the issues raised in Shaw's Complaint.  While Shaw's request for declaratory relief may seek determination of issues that will be determined pursuant to its other claims, it can be read as a claim in the alternative.  Therefore, the Court will not dismiss the claim.

F.      Does Shaw's Complaint State a Claim for an Accounting and Dissolution Because
        it Cannot be Said, as a Matter of Law, that the Parties were not Engaged in a Joint
        Venture?

ACIC seeks dismissal of Shaw's claim for accounting and dissolution on the basis that no joint venture existed between ACIC and Shaw.  In deciding that ACIC is not entitled to dismissal of Shaw's claim for breach of fiduciary duty, the Court has already noted that it cannot be determined, from the face of the Complaint and the attached documents, that no joint venture was created between ACIC and Shaw.  Therefore, ACIC is not entitled to dismissal of Shaw's claim for accounting and dissolution as it cannot be said that Shaw can prove no set of facts in support of this claim that would entitle it to relief.

**CONCLUSION**

IT IS THEREFORE ORDERED that Shaw's Motion for Leave to File Surreply [Docket No. 28] is hereby DENIED IN PART to the extent it seeks to file a surreply to ACIC's Motion to Dismiss.  Having previously granted the motion in part, the motion is now termed.

IT IS ALSO ORDERED that ACIC's Motion to Dismiss is hereby GRANTED IN PART to the extent Shaw attempts to bring a claim against ACIC for violation of California Insurance Code § 769.

IT IS FINALLY ORDERED that ACIC's Motion to Dismiss is hereby DENIED IN PART with respect to Shaw's remaining claims.


_____
UNITED STATES DISTRICT JUDGE